UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN R. ATKINSON III,

                              Plaintiff,

                                                        9:07-CV-0368
v.                                                      (GLS/GHL)

BRIAN FISCHER, JOHN J. DONELLI,
DR. WEISSMAN,

                              Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

JOHN R. ATKINSON III
Plaintiff *pro se*
88 Stephen Road
Bayport, New York 11705

HON. ANDREW M. CUOMO                           STEVEN H. SCHWARTZ, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff John R.

Atkinson III alleges that Defendants Brian Fischer (the commissioner of the New York State

Department of Correctional Services), John J. Donelli (the superintendent of Bare Hill

Correctional Facility), and Dr. Ira Weissman (a physician at Bare Hill) violated his constitutional

rights by assigning him to a top bunk, assigning him to a job that required physical exertion, providing inadequate medical care, and providing preferential medical treatment to Jewish inmates. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 41.)  For the reasons that follow, I recommend that Defendants' motion be granted.

## I.      BACKGROUND

Plaintiff entered the New York State Department of Correctional Services ("DOCS") system on September 28, 2005.  He was initially housed at Downstate Correctional Facility. (Dkt. No. 7 at ¶ 8.)  Plaintiff alleges that he completed a brief medical history at Downstate in which he stated that he suffered from asthma, vertigo, and dizziness associated with his medication.  (Dkt. No. 7 at ¶ 9.)

Plaintiff was transferred to Bare Hill Correctional Facility in October 2005.  (Dkt. No. 7 at ¶ 10.)  He alleges that he was assigned to a top bunk "even though history from Down[s]tate Facility should have classified him as a 'Medical Bottom.'" (Dkt. No. 7 at ¶ 11.)  Plaintiff's transfer paperwork[1] made no mention of Plaintiff requiring a bottom bunk.  (Dkt. No. 41-3,

---

[1]      Defendants' motion for summary judgment is supported by prison records, including grievance records and medical records.  Motions for summary judgment must be supported by admissible evidence.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  Fed. R. Evid. 802.  Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule.  That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902.  Fed. R. Evid. 803(6).  Here, none of the records are supported by any affidavit and have not been

Defendants' Rule 7.1(a)(3) Statement at ¶ 8; Dkt. No. 43-2, Plaintiff's Opposition to Motion for Summary Judgment at ¶ 8.)

On January 16, 2006, Plaintiff fell from the top bunk.  (Dkt. No. 41-3 at ¶ 2.)  He hit his head and neck.  (Dkt. No. 7 at ¶ 12.)  Plaintiff was escorted to the infirmary, where he was given ibuprofen and sent back to his cell.  (Dkt. No. 7 at ¶¶ 14-15.)  An inmate injury report was prepared, in which it was noted that there was no swelling, that the skin was intact, that Plaintiff was alert and oriented, that Plaintiff's pupils were equal and reacted to light, and that Plaintiff denied pain or injuries in his extremities or trunk.  (Dkt. No. 41-4, Defendants' Ex. A.)

Sometime after the fall, Plaintiff was assigned to a bottom bunk.  (Dkt. No. 7 at 28[2].)

Within a few days of the fall, Plaintiff alleges that he began experiencing severe headaches, neck aches, and dizziness.  (Dkt. No. 7 at ¶ 16.)  Plaintiff requested x-rays of his neck.  (Dkt. No. 7 at ¶ 19.)

The chronology of Plaintiff's requests for x-rays and his receipt of results is somewhat unclear.  Plaintiff alleges that his neck was not x-rayed until five months after the fall.  (Dkt. No. 7 at ¶ 21.)  Attachments to the complaint indicate that Plaintiff had requested x-rays before he fell, and that he received at least some x-ray results within a few days of the fall.  For instance, in a grievance filed by Plaintiff on the day after his fall, Plaintiff stated that he had waited four

---

certified. Therefore, the records are not technically admissible.  *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980).  I have considered them, however, because Plaintiff  relied on many of the same records in his complaint and in his opposition to the motion for summary judgment.  I caution defense counsel that medical and grievance records should, in the future, be properly authenticated and accompanied by an affidavit or certification that complies with Rule 803.

[2]      This exhibit to Plaintiff's complaint is not labeled with a letter.  The page number in the citation refers to the page number assigned by the Court's electronic filing system.

months for an x-ray, that he had been told it would be reviewed in 10 days, and that it had been 30 days.  Plaintiff also complained that he was very dizzy and experienced headaches every day.  He stated that he "was told I would be seeing a doctor" and requested a response in writing "as to how long I have to wait to see a physician."  (Dkt. No. 7, Ex. A.)  Plaintiff was instructed to come to sick call, where the nurse would give him the results of his x-ray.  There was no response regarding his request to see a doctor.  *Id.*  Plaintiff's medical records show that he was given the results of the x-ray on January 20, 2006.  (Dkt. No. 41-11, Defendants' Ex. H at 16.)

Plaintiff's medical records show that he was seen on January 31, 2006.  At that time he complained of headaches and dizziness since his fall.  It was noted that he was already scheduled to see the doctor.  (Dkt. No. 41-11, Defendants' Ex. H at 15.)

On February 1, 2006, Plaintiff wrote another letter asking when he would see a doctor.  (Dkt. No. 7, Ex. A1.)  The response was that he was "scheduled to see the facility doctor ... We do not give exact dates for call outs, sorry!"  *Id.*

On February 2, 2006, Plaintiff filed a "Request for Interview or Information."  In the request, he stated that he had been told that there was no history of vertigo listed in his charts.  He stated that he had compiled a more complete medical history.  (Dkt. No. 7, Ex. B.)

Plaintiff's medical records show that on March 21, 2006, he complained of pain in the back of his neck. (Dkt. No. 41-11, Defendants' Ex. H at 15.)

On April 1, 2006, Plaintiff filed a grievance.  (Dkt. No. 7 at ¶ 22.)  He stated that when he fell out of his bunk, he had been placed on the "infamous 5 plus month waiting list to see the doctor."  He stated that his neck cracked each time he turned it and that he suffered daily headaches and dizziness.  He complained that the only care he had received was motrin and

4

ibuprofen.  He stated that a nurse at sick call felt his neck and opined that there was something wrong with it and that he would probably be recommended for physical therapy.  (Dkt. No. 7, Ex. C.)

Plaintiff's medical records show that on April 6, 2006, Plaintiff was seen by Dr. Ferrari, who ordered an x-ray of Plaintiff's spine.  (Dkt. No. 41-11, Defendants' Ex. H at 14.)

In response to Plaintiff's April 1, 2006, grievance, Defendant Donelli stated that Plaintiff had been evaluated by a doctor on April 6, 2006.  Donelli noted that "[x]-rays ordered at that time reveal degenerative changes at C6 and C7.  No treatment was ordered at that time."  (Dkt. No. 7 at ¶ 22, Ex. E.)

Plaintiff's medical records show that on June 2, 2006, Plaintiff complained of stiffness and pain in his neck that had lasted for several months.  He claimed that his niece, who is a physical therapist, assessed his neck as being "distorted."  Plaintiff was scheduled to see a doctor. (Dkt. No. 41-11, Defendants' Ex. H at 13.)

Plaintiff's medical records show that on July 21, 2006, Plaintiff complained of neck pain and stated that he had had some relief from ibuprofen.  He was told to report to nurse sick call. A doctor's review regarding ibuprofen was ordered.  (Dkt. No. 41-11, Defendants' Ex. H at 12.)

On August 11, 2006, Plaintiff filed a "Request for Interview or Information."  He stated that since receiving Defendant Donelli's response to his April 1, 2006, grievance, he had been to the infirmary three times.  Each time he was denied pain medication and told that a prescription had been ordered for him.  He asked "when something is going to be done for me with regards to an injury I sustained at this facility?"  (Dkt. No. 7, Ex. I.)  On August 14, 2006, staff responded that Plaintiff was scheduled to see the doctor "very soon."  *Id*.

Defendant Dr. Weissman examined Plaintiff on August 14, 2006.  Plaintiff had pain on neck flexing and minimal tenderness elsewhere.  Based on the examination and Plaintiff's medical record, Dr. Weissman diagnosed Plaintiff with moderate to severe degenerative disc space disease.  Dr. Weissman prescribed Naprosyn (an anti-inflammatory drug), Robaxin (a muscle relaxant), and lab work.  (Dkt. No. 41-15, Weissman Aff. at ¶ 6.)  Plaintiff alleges that Dr. Weissman told Plaintiff to notify him if there were any adverse side effects or if the medication failed to relieve Plaintiff's symptoms.  (Dkt. No. 7 at ¶¶ 26-27.)

Plaintiff's medical records show that on September 6, 2006, Plaintiff reported that the medication was not giving him any relief.  He was scheduled for a doctor's call out.  (Dkt. No. 41-11, Defendants' Exhibit H at 12.)

Plaintiff's medical records show that on September 19, 2006, Plaintiff again complained of constant neck pain and stated that the medications were not effective.  The medical record states that Plaintiff "is scheduled to see MD."  (Dkt. No. 41-11, Defendants' Ex. H at 11.)

In September 2006, Plaintiff was assigned a job that required him to sweep, mop, and shovel snow.  The job caused him physical pain and he filed a grievance requesting a new assignment. (Dkt. No. 7 at ¶ 41, Ex. J.)  The grievance was denied by R. Donaldson.  The response stated that Plaintiff needed "to contact medical in order to be evaluated for potential restrictions.  Without standing restrictions, [Plaintiff] must program as instructed.  Failure to program may result in disciplinary sanctions."  (Dkt. No. 7, Ex. L.)

On October 4, 2006, Plaintiff wrote to Dr. Lester Wright, the Chief Medical Officer, asking to be reclassified to a bottom bunk and limited work status.  (Dkt. No. 7, Ex. H.)  Dr. Wright's office responded that Plaintiff was "approved to see the facility physician" and that it

"appears that your medical needs are being met."  (Dkt. No. 7 at 26[3].)  A month later, Dr.

Wright's office sent Plaintiff an identical letter.  (Dkt. No. 7 at 27[4].)

On December 6, 2006, the Central Office Review Committee noted that Plaintiff was no

longer assigned to the porter position or to a top bunk, but that "there is no medical necessity for

a program restriction or bottom bunk permit."  (Dkt. No. 7 at 28[5].)

Plaintiff's complaint alleges that he sent a letter to Defendant Fischer, who responded that

Plaintiff's needs were being met.  (Dkt. No. 7 at ¶¶ 35-36.)  In his opposition to the motion for

summary judgment, Plaintiff states that he actually sent this letter to and received a response

from former DOCS Commissioner Glenn Goord.  (Dkt. No. 43-2 at ¶ 7.)

Plaintiff's medical records show that he saw Dr. Weissman on January 31, 2007.  (Dkt.

No. 41-11, Defendants' Ex. H at 8.)  In an affidavit filed in support of Defendants' motion for

summary judgment, Dr. Weissman states that Plaintiff's symptoms "were similar to those he

revealed previously, and my diagnosis was similar, as well.  Therefore, I continued the Naprosyn,

but prescribed Flexeril in place of Robaxin, as it is a more powerful muscle relaxant."  (Dkt. No.

41-15 at ¶ 7.)

Plaintiff alleges that the Flexeril did not relieve his pain and caused psychological side

effects.  (Dkt. No. 7 at ¶ 39.)  Plaintiff's medical records show that on February 7, 2007, he

---

[3]    This exhibit to Plaintiff's complaint is not labeled with a letter.  The page number in the citation refers to the page number assigned by the Court's electronic filing system.

[4]    This exhibit to Plaintiff's complaint is not labeled with a letter.  The page number in the citation refers to the page number assigned by the Court's electronic filing system.

[5]    This exhibit to Plaintiff's complaint is not labeled with a letter.  The page number in the citation refers to the page number assigned by the Court's electronic filing system.

directed a "Request for Interview or Information" to Dr. Weissman, requesting that he be allowed

to return all of the medications in his possession and "move forward without drugs." (Dkt. No.

41-11, Defendants' Ex. H at 7.) Dr. Weissman discontinued the Flexeril on February 19, 2007.

(Dkt. No. 41-11, Defendants' Ex. H at 8; Dkt. No. 41-15 at ¶ 7.)

Dr. Weissman states that he recommended physical therapy for Plaintiff after seeing him

on January 31, 2007. (Dkt. No. 41-15 at ¶ 7.) Plaintiff alleges that eighteen months after

sustaining his injury, he was taken to Franklin Correctional Facility, where he was left shackled

and handcuffed for four hours before seeing a therapist. (Dkt. No. 7 at ¶ 42.) He was then told to

return in two weeks. (Dkt. No. 7 at ¶ 43.) Plaintiff alleges that the physical therapist told

Plaintiff that he was recommending a neck brace. *Id.*

Plaintiff's medical records show that he attended physical therapy on February 28, March

26, March 28, April 4, April 9, April 11, April 18, and April 25, 2007. (Dkt. No. 41-11,

Defendants' Ex. H at 2-4, 6.)

Plaintiff's medical records show that on May 8, 2007, Plaintiff complained that he had

not been to physical therapy since April 25. (Dkt. No. 41-11, Defendants' Ex. H at 2.)

Plaintiff alleges that he went to sick call on May 24, 2007. (Dkt. No. 7 at ¶ 44.) He was

told that there was no record of a prescription for a neck brace and that because he had one

physical therapy session left, he could not apply for a renewal. *Id.* Plaintiff's medical records

show that at this sick call session, Plaintiff complained that he had not been to physical therapy

since April 25. The nurse noted that Plaintiff should have one physical therapy session

remaining. (Dkt. No. 41-11, Defendants' Ex. H. at 1.)

Plaintiff's medical records show that he reported continued neck pain on May 29, 2007.

(Dkt. No. 41-11, Defendants' Ex. H at 1.)

Plaintiff alleges that throughout this period he was denied ibuprofen on numerous occasions.  (Dkt. No. 7 at ¶ 32.)

Plaintiff alleges that a Jewish inmate told him that he never waited more than a few days to see a doctor because "Jews take care of their own."  Plaintiff alleges that "[i]f the inmate's claim is true, Dr. Weismann ... would be guilty of discrimination."  (Dkt. No. 7 at ¶ 47.)

Plaintiff's complaint requests a second opinion about his medical condition, an MRI, $400,000 in compensatory damages, $1 million in punitive damages, and payment for future medical needs.  (Dkt. No. 7 at ¶ 55.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply

show that there is some metaphysical doubt as to the material facts."[6]  Rather, "[a] dispute

regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."[7]  In determining whether a genuine issue of material[8] fact

exists, the Court must resolve all ambiguities and draw all reasonable inferences against the

moving party.[9]

### B.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of a plaintiff's complaint, such a motion is

functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure

to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise*

*General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz*

*v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a

Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper

with or without notice to the parties.").  Moreover, even where a defendant has not advanced

---

[6]    *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[7]    *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[8]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[9]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

10

such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[10]  For these reasons, it is appropriate to briefly summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

    Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[11] or (2) a challenge to the legal cognizability of the claim.[12]

---

    [10]    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

    [11]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

    [12]    *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[13] The main purpose of this rule is to "facilitate a proper decision on the merits."[14] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[13]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[14]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

for the Court to assess the sufficiency of [plaintiff's] claims."[15]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)).  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[16]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is

---

[15]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[16]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

submitted *pro se*."[17]  In other words,  while all pleadings are to be construed liberally under Rule

8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it

appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as

effectively amending the allegations of the plaintiff's complaint, to the extent that those factual

assertions are consistent with the allegations of the plaintiff's complaint.[18]  Moreover, "courts

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

they suggest."[19]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

---

[17]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200
(2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999)
[citation omitted].

[18]     "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to
consider materials outside the complaint to the extent they 'are consistent with the allegations in
the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering
factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part
on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on
case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a
matter of right, to amend his complaint once at any time before the service of a responsive
pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39
(2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to
dismiss) [citations omitted].

[19]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

complaint gives any indication that a valid claim might be stated."[20]  Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[21]  In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[22]

However, while this special leniency may somewhat loosen the procedural rules

---

[20]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[21]    *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[22]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted];  *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

15

governing the form of pleadings (as the Second Circuit has observed),[23] it does not completely

relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and

12.[24]   Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the

requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights

plaintiffs must follow.[25]   Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal

rules of pleading are not absolutely suspended."[26]

_____

[23]      *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[24]      *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[25]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[26]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

**III.   ANALYSIS**

**A.   Official Capacity**

Plaintiff has sued Defendants in their individual and official capacities.  (Dkt. No. 7, caption.)  Defendants argue that the claims against them in their official capacities are barred by the Eleventh Amendment.  (Dkt. No. 41-16 at 2-3.)   Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[27]  All DOCS employees are state officials for the purposes of the Eleventh

---

[27]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if

Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").  Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket."  *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3).

Here, the face of the complaint alleges that each Defendant has an official position with DOCS.  (Dkt. No. 7 at ¶¶ 3-5.)  Therefore, any claims against the Defendants in their official capacities are barred by the Eleventh Amendment.  Accordingly, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendants in their official capacities.

**B.      Claims Regarding Top Bunk Placement**

Plaintiff claims that his constitutional rights were violated when he was assigned to a top bunk upon his transfer to Bare Hill Correctional Facility, resulting in his fall two months later.

---

he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

(Dkt. No. 7 at ¶11.)  Defendants argue that Plaintiff has not raised a genuine issue of material fact that the top bunk placement violated Plaintiff's constitutional rights.  (Dkt. No. 41-16 at 12-13.) Defendants are correct.

Plaintiff's claim regarding his top bunk placement can be analyzed either as an Eighth Amendment conditions of confinement claim or an Eighth Amendment medical care claim.  In order for Plaintiff to succeed on either claim, he must show that the defendants acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Deliberate indifference to a condition of confinement exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish medical deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703.

Here, Plaintiff cannot raise a genuine issue of material fact that Defendants acted with deliberate indifference regarding his top bunk placement.  It is undisputed that when Plaintiff transferred to Bare Hill Correctional Facility from Downstate Correctional Facility on October

19

21, 2005, his transfer paperwork made no mention of Plaintiff requiring a bottom bunk.  (Dkt. No. 41-3, Defendants' Rule 7.1 (a)(3) Statement at ¶ 8; Dkt. No. 43-2, Plaintiff's Opposition of Motion for Summary Judgment at ¶ 8.)  Plaintiff asserts that he had reported vertigo to physicians at Downstate, but that information does not appear in his transfer records.  *Id.*  Rather, the transfer records show only that Plaintiff complained of pain in his lower back and shoulder. (Dkt. No. 41-10, Defendants' Ex. G at 3.)  As a result, there were no facts available to Defendants from which they could have drawn the inference that Plaintiff required a bottom bunk placement upon his transfer to Bare Hill Correctional Facility.  Further, there is no evidence that Defendants actually drew that inference.  Moreover, Defendants placed Plaintiff in a bottom bunk sometime after the fall.  (Dkt. No. 7 at 28.)  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claim regarding his top bunk placement.

### C.      Claims Regarding Porter Position

Plaintiff claims that his constitutional rights were violated when he was assigned to a porter position in September 2006.  (Dkt. No. 7 at ¶ 41.)  Defendants argue that Plaintiff has not raised a genuine issue of material fact.  (Dkt. No. 41-16 at 13-14.)  Defendants are correct.

Defendants have addressed this claim as a due process issue.  Defendants correctly note that prisoners do not have a liberty interest in the job of their choice.  *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996).  However, that fact is relevant only in cases where prisoners claim that they have been removed from a job against their will, for instance by being confined to the SHU.  Here, Plaintiff's claim is *not* that he was removed from the job of his choice but rather that he was forced to do a job that he claims he was physically unable to perform.  Therefore, I find

that the claim is more appropriately addressed as an Eighth Amendment medical care issue.

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance* , 143 F.3d at 702.  Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

At the time he was assigned to the porter position, Plaintiff had been diagnosed with degenerative disc disease.  (Dkt. No. 41-15 at ¶ 6.)  Degenerative disc disease can be classified as a serious medical condition, particularly if the pain associated with it lasts for an extended period of time.  *Mendoza v. McGinnis*, No. 05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *10 (N.D.N.Y. Sept. 11, 2008); *Harris v. Morton*, No. 9:05-CV-1049 (LEK/RFT), 2008 WL 596891, at *3 (N.D.N.Y. Feb. 29, 2008)[28].  Plaintiff alleges that he suffered from back and neck pain for

---

[28]     The undersigned will provide a copy of these unpublished decisions to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

an extended period of time.

Even if one classifies Plaintiff's condition as sufficiently serious, however, there is no evidence that the named defendants were deliberately indifferent to that condition.  There is no evidence before the Court that any of the named Defendants were involved at all in the decision to assign Plaintiff to the porter job, much less that in doing so they were deliberately indifferent. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[29]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[30]  Here, there is no evidence that Defendants Donelli, Weissman, or Fischer were in any way involved with Plaintiff's job assignment.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claims regarding his job assignment.

### D.    Medical Care

Plaintiff claims that Defendants violated his Eighth Amendment right to medical care. (Dkt. No. 7 at ¶¶ 45-46.)  Defendants argue that Plaintiff's claim is not supported by evidence raising a genuine issue of material fact.  (Dkt. No. 41-16 at 14-18.)  Defendants are correct.

As discussed above, to prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical

---

[29]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[30]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle*

*v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  As

discussed above, Plaintiff suffered from a serious medical need.  The issue, then, is whether

Defendants were deliberately indifferent to that need.

     Medical mistreatment rises to the level of deliberate indifference only when it "involves

culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a

substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511

U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must prove that (1) a

prison medical care provider was aware of facts from which the inference could be drawn that the

inmate had a serious medical need; and (2) the medical care provider actually drew that

inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must

establish that the provider consciously and intentionally disregarded or ignored that serious

medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An

"inadvertent failure to provide adequate medical care" does not constitute "deliberate

indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the

Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316

F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing

medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical

care will rise to the level of a constitutional violation.").

     Here, the two-and-a-half month lapse of time between Plaintiff's fall and the examination

by Dr. Ferrari, the delays in Plaintiff's receipt of pain medication that had been ordered for him, the four-month lapse of time between the examination by Dr. Ferrari and the examination by Defendant Dr. Weissman, the four-month lapse of time between Plaintiff's report that the pain medication that he had received was not effective and Dr. Weissman's prescription of a stronger medication, and the apparent failure to ensure that Plaintiff attended his last remaining physical therapy session are somewhat troubling.  However, as Defendants note, Plaintiff's claims are quite similar to those raised in *Crum v. Marini*, No. 06-CV-0513 (GLS/DRH), 2007 WL 3104750 (N.D.N.Y. Oct. 22, 2007), in which Judge Sharpe granted summary judgment for the defendants on the prisoner's medical care claims[31].

In *Crum*, a prisoner suffering from degenerative cervical spondylosis alleged that the medical care provided to him violated the Eighth Amendment.  The prisoner complained, in particular, that the defendants denied his numerous requests for an MRI and that he was only provided care by non-physicians.  Judge Sharpe granted the defendants' motion for summary judgment dismissing the prisoner's Eighth Amendment claim.  He noted that:

> Crum's medical records indicate that he was evaluated by various medical personnel on numerous occasions ...; that he was prescribed medication for his pain, that he was given x-rays and MRIs; and that defendant Dr. Marini periodically reviewed his medical records. There is no evidence, beyond Crum's conclusory allegations, that Crum's medical needs were ignored.  That Crum may have preferred a system under which he had full and unfettered access to Dr. Marini, as opposed to a system under which the first line of contract was with [a Health Services Administrator] or [a physician's assistant], is not enough to establish deliberate indifference.

*Crum*, 2007 WL 3104750, at * 4.

---

[31] The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

24

Here, Plaintiff was evaluated by medical personnel frequently, prescribed pain medication, and given x-rays.  Dr. Ferrari and Dr. Weissman periodically examined him and reviewed his medical records.  Thus, as in *Crum*, Plaintiff has not raised a genuine issue of material fact that Defendants were deliberately indifferent to his serious medical need.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Eighth Amendment medical care claim.

### E.     Discrimination

Plaintiff claims that another inmate told him that Dr. Weissman provided care more promptly to Jewish inmates than to non-Jewish inmates.  (Dkt. No. 7 at ¶ 47.)  Defendants argue that Plaintiff has not raised a triable issue of fact.  (Dkt. No. 41-16 at 18-20.)  Defendants are correct.

"To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests."  *Id*.

Here, there is no evidence that Dr. Weismann treated any similarly situated individuals any differently than he treated Plaintiff.  Plaintiff's complaint alleges that *if* what he was told by the other inmate is true, *then* Dr. Weissman would be guilty of discrimination.  (Dkt. No. 7 at ¶ 47.)  In his opposition to the motion for summary judgment, Plaintiff states that he was denied discovery of the other inmate's medical records but that "[d]ates of requests for doctor visit of

this inmate compared with dates of actual visits would show that the Jewish inmate ... was seen by Dr. Weissman within two weeks of the request whereas Plaintiff had to wait a minimum of four months." (Dkt. No. 43-4, Plaintiff's Response to Declaration of Dr. Weissman at ¶ 10.) Even if Plaintiff had been granted the discovery he sought and there were evidence before the Court establishing that the other inmate was seen more promptly than Plaintiff, there is no evidence that the other inmate was similarly situated to Plaintiff. The other inmate's medical condition, for instance, may have been more serious or time-sensitive than Plaintiff's. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's equal protection claim against Dr. Weissman.

### F.    Personal Involvement

Plaintiff's claims against Defendants Fischer and Donelli are, essentially, that he was dissatisfied with their responses to his grievances. (Dkt. No. 7 at ¶¶ 22, 35-36, Ex. E.) Defendants argue that Plaintiff has failed to adequately allege that Defendants Fischer and Donelli were personally involved in any constitutional violation. (Dkt. No. 41-16 at 3-6.) Defendants are correct.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[32] Here, as discussed above, there was no constitutional violation. Therefore, Defendants Fischer and Donelli were not personally involved in any violation and are not liable. Accordingly, I

---

[32]    *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

recommend that the Court grant Defendants' motion for summary judgment and dismiss all claims against Defendants Fischer and Donelli.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 41) be **GRANTED**; and it is further

**ORDERED** that the Clerk serve copies of *Mendoza v. McGinnis*, No. 05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *10 & n. 16 (N.D.N.Y. Sept. 11, 2008),  *Harris v. Morton*, No. 9:05-CV-1049 (LEK/RFT), 2008 WL 596891, at *3 (N.D.N.Y. Feb. 29, 2008), and *Crum v. Marini*, No. 06-CV-0513 (GLS/DRH), 2007 WL 3104750 (N.D.N.Y. Oct. 22, 2007) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: July 10, 2009
     Syracuse, New York

George H. Lowe
United States Magistrate Judge